## WELLS v CITY RAILWAY CO

Ohio Appeals, 2nd Dist, Montgomery Co

No 1477. Decided January 25, 1938

Harry P. Jeffrey, Dayton, Norman L. Weisman, Dayton, for plaintiff-appellee.

McMahon, Corwin, Landis & Markham, Dayton, for defendant-appellant.

## OPINION

By HORNBECK, J.

This is an appeal on questions of law from a judgment in the sum of $5,000.00 for plaintiff, entered on a special verdict in his behalf.

The brief of defendant sets forth and discusses five assignments of error, as follows:

"First: Error in the General Charge on Instructing the jury that they must Assess Dammages.

"Second: Error in 'he Special Verdict.

"Third: Error in the Exclusion of Evidence.

"Fourth: The verdict is Manifestly against the Weight of the Evidence.

"Fifth: The verdict is Excessive, Appearing to have been Rendered Under the Influence of Passion and Prejudice."

FIRST: ERROR IN THE GENERAL CHARGE.

The court submitted to the jury three forms of special verdicts, two prepared and tendered by counsel for defendant and one prepared and tendered by counsel for plaintiff. One of the forms tendered by the defendant expressly found facts disclosing negligence on the part of the defendant company and contributory negligence of the plaintiff, the language indicating contributory negligence as follows:

"The plaintiff drove his automobile in a left turn from a position of Home Avenue clear of the eastbound car track northwardly on to the east bound car track at the Ardmore Avenue crossing without making sure that he could do so in safety, and without exercising ordinary care to determine whether or not an east bound street car was approaching when the eastbound car was so close to the crossing that its motorman could not bring it to a stop in time to avoid the collision."

The other form tendered by defendant included findings that the defendant company was not negligent and that the plaintiff was contributorily negligent in this language:

"Defendant's motorman operated the street car eastwardly on Home Avenue towards Ardmore Avenue at an average rate of speed, sounded his gong as a warning of the car's approach and kept a look out for traffic at Ardmore Avenue. At the time the front headlight on the car was burning and the inside lights were lighted."

The language respecting contributory negligence was as carried in the special verdict, from which quotation was heretofore made.

The third form, and the one submitted by the plaintiff, in part, recited the following:

"On September 23rd, 1934, at about 9:30 o'clock P. M. the plaintiff was driving his said automobile in an Easterly direction on Home Avenue and had turned the said automobile and headed in a Northerly direction at the intersection of Home Avenue and Ardmore Avenue and had stopped his automobile on the East Bound car track upon the approach of a west bound street car.

"The street car company at the said time and place was operating an east bound street car by its agent and employee within the scope of his employment at a fast and excessive rate of speed, and without having a headlight burning on the said street car. The operator of the said east bound street car also failed to give a warning signal of his approach, failed to have the said street car under control, and failed to watch for and observe traffic at the said time and place. A collision occurred between the defendant's street car and the plaintiff's said automobile at the said time and place and the said accident was caused directly and proximately by the negligence of the street car company's agent and employee in the foregoing respects, as a result of which the plaintiff received various injuries including a fracture of the pelvis bone, fracture of two lumbar vertebrae and an injury to his kidneys, which in turn caused the plaintiff to suffer great pain and to undergo long treatment under the care of physicians and hospitalization and which injuries prevented the plaintiff from working and have impaired his health and ability to work.

"The plaintiff exercised due care in the operation of his said automobile at the time and place.

"The said collision also caused severe damage to plaintiff's said automobile.

"Should the court, upon this special verdict, determine that the plaintiff is entitled to damages, then we assess the amount thereon in the sum of ——————."

The jury fixed the amount of damages in the sum of $5,000.00.

The court in its general charge read to the jurors all three of the special forms of verdict in their entirety and explained to them that they might use any one of them in its entirety or make a finding of one or more of the ultimate facts therein set forth or return a special verdict of their own preparation. Following the reading of the special verdicts the court said to the jury:

"You understand, the jury make the special findings of facts and then the court

applies the law to those special findings of facts as you make them and from that determines whether or not the defendant is liable in damages to the plaintiff. Without determining then whether or not the defendant is liable, you will determine what amount of damages the plaintiff would be entitled to if the court, from the special findings of facts made by you, determine that the defendant is liable and the rule by which you will determine that amount is as follows:"

Then is set forth the measure of damages.

The error assigned is that the court instructed the jury that it must assess damages.

In connection with the special verdict which the jury returned, which expressly states that if the court finds upon the special verdict returned that the plaintiff is entitled to damage, then the jury assesses the amount in the sum of $————, we are satisfied that the defendant was not prejudiced by the form of the general charge to which objection is made. Nor would there be any prejudicial error had the court expressly said to the jury that if it returned the third form of special verdict tendered, namely, for the plaintiff, it should fix damages in some amount because it could not be otherwise then that damages should be awarded if the factual findings of this special verdict were adopted by the action of the jury. Upon the whole record the amount carved in the special verdict is an interpretation of the extent of money damages which the jury found measured in the terms of the instructions of the court.

TWO: ERROR IN THE SPECIAL VERDICT.

We have set out the forms of special verdict and the one returned by the jury at sufficient length in considering the first ground of error. Objection is made to the finding, "the plaintiff exercised due care at the time and place," and it is asserted that this is not a finding of an ultimate fact but a mere conclusion of law.

The second syllabus in **Noseda v Delmul, 123 Oh St 648**, says:

"A special verdict is not innvalid because there is not a finding of ultimate facts on all the issues. When certain of the issues are not determined they are to be regarded as not proved by the party which has the burden of proof upon those issues."

Granted that the finding is but a conclusion of law, it would not, upon application of the syllabus quoted, invalidate the special verdict because the burden of proving contributory negligence is upon the defendant, unless it is suggested by plaintiff's evidence. As to the latter, clearly the finding is sufficient to rebut the conclusion that plaintiff's own evidence suggested his contributory negligence.

In **Martz v Floral Products Company, 17 Abs 118**, et seq., we discuss the Noseda case and it will be observed that it is in conflict with cases in other jurisdictions.

We do not subscribe to the theory that the finding is but a conclusion of law. In conjunction with the facts respecting the conduct of the plaintiff immediately before and at the time of the collision, it is sufficient to characterize this conduct as constituting due care under all circumstances, which after all is the test as to plaintiff's negligence.

THE THIRD ERROR IS EXCLUSION OF EVIDENCE.

Riding with the plaintiff at the time of the collision were the plaintiff's wife and a friend by the name of Harvey Fuller. Mrs. Wells and Harvey Fuller also instituted actions against the defendant and their cases had been tried before the instant case. Counsel for defendant undertook to inquire of the plaintiff why he had not testified at the trial, wherein his wife was plaintiff, the purpose of which was to show that he was fearful that he could not repeat his testimony without change. Upon refusal to permit the inquiry to be developed counsel made a proffer of testimony as follows:

"Q. You were fimiliar with the fact that your wife's trial against this same company to recover for injuries sustained in the same accident, with which we are now confronted, took place in May 1936."

Exception, the witness to answer "yes."

"Q. You didn't come to court to testify in behalf of your wife, did you, Mr. Wells."

Exception, the witness to answer "He did not."

"Q. Isn't it true Mr. Wells, that the reason why you didn't is because you knew that in your own case you would have to relate the account of the same accident which you would have to testify about in your wife's case, you would be on record

under oath at the time when your own case would be on for trial?

"Q. If it isn't the fact Mr. Wells that the knowledge that you would be here on record in your wife's trial, when you came to testify in your own trial was the reason why you did not come in your wife's trial.

"A. My answer is, that would be the reason." Exception.

Thereafter, queries were made of witnesses as to former testimony, wherein the question included designation of the trial in which the evidence was taken and the date thereof. The court refused all of this testimony in that form, evidently upon the theory that it might improperly divulge to the jury the result of the former trial. The reason actuating the ruling of the court no doubt was proper but the time to give it application had not been ██ reached. The questions propounded were in all instances in proper form and answers should have been permitted. Of course, if any question or the answer thereto would have disclosed the result of a former trial growing out of the same accident it should not have been accepted. However, it is evident from the record that without exception counsel by reframing his questions secured all desired answers relating to former testimony and thereafter, through the stenographers who had made the record in the other cases, the exact testimony of the witnesses was produced and its effect, if impeaching was before the jury.

An answer to the question directed to the plaintiff respecting the reason for his failure to testify at his wife's trial was not forthcoming at any place in the record, nor is it discussed at any time.

It is probable that the admission of this testimony was within the discretionary power of the court. However, if it was not within the field of discretion and if the court erred in refusing to permit the question to be answered, it does not appear to have been prejudicial and the error would not be sufficient to warrant a setting aside of the verdict and judgment.

FOURTH: THE VERDICT IS MANIFESTLY AGAINST THE WEIGHT OF THE EVIDENCE.

This is the one difficult question presented on this record. We have no hesitancy in resolving all of the other claimed errors in favor of the plaintiff. Not only was there marked difference in the testimony of the plaintiff and his witnesses and that of the defendant and its witnesses respecting material facts iinvolved, but there was also discrepancy in the testimony of defendant's witnesses upon one material fact.

The claim of the plaintiff was, and in all material particulars he is supported by the finding of the jury in the special verdict, that in the night season, namely, about 9:30 o'clock on September 23, 1934, he was driving his Ford automobile in an easterly direction on Home Avenue and preparatory to moving north across the intersection of Home Avenue and Ardmore Avenue stopped his automobile a few feet to the south of the east bound street car tracks; that he then looked to the west for an oncoming street car and observed none; that he then moved onto the east bound tracks; that at about that time there approached a street car moving west on the west bound tracks; that it stopped and permitted several passengers to alight therefrom; that the plaintiff stopped his car because of the approach of the west bound street car; that while he was in this position, where he remained approximately one-half minute, the east bound street car, bearing no lights and sounding no alarm, came on and crashed into the automobile.

It was the claim of the defendant that the automobilist made no signal of his purpose to move into the intersection; that he could not be heard to say that he did not see the oncoming street car and that his movement onto the tracks was at a time when it was beyond the ability of the operator of the street car to stop it before colliding with the automobile.

The plaintiff and those who were riding in the atuomobile with him testified that he stopped at a distance of several feet to the south of the east bound car tracks and thereafter moved onto the tracks. Some of the plaintiff's witnesses did not remember having seen him stop before moving onto the tracks, although no one of them said that he did not do so. One and possibly two of the defendant's witnesses said that he moved onto the east bound tracks without stopping, but the operator of the street car corroborates the plaintiff's testimony that he stopped a few feet to the south of the east bound car tracks. The operator, however, differed with the plaintiff and his witnesses respecting the time when he remained on the track prior to the collision.

The question which naturally arises upon this record is whether or not it is probable that the street car carried no headlights at and prior to the time of the collision. However, this specific question was propounded to the jury and if it believed the

testimony of plaintiff and his witnesses it was fully within its perogative in finding that the headlight was n. burning.

The query which arises in the minds of the members of the court deals with the probability in the light of common practice in operating street cars in the night season and not upon the record evidence. It must be conceded that upon this record there is abundant proof, if accepted, that no headlight was burning on this moving car. If this major fact is resolved in favor of the plaintiff, then it can not be said that as a matter of law he was chargeable with contributory negligence in doing that which he did.

The defendant claims that there was nothing to prevent the plaintiff moving on across the intersection in front of the stopped west bound street car. Plaintiff's theory is that it would have been unsafe because of west bound automobile traffic moving to the north of the west bound car. Whether or not the plaintiff acted with due care in this situation was one of fact for the jury.

The case of **Penn Rd. Co, v Rusynik, 117 Oh St 530**, is not determinative of the question presented here if the oncoming street car was an object which, in the exercise of due care, the plaintiff could not have seen, though he looked.

The special verdict in this case has none of the infirmity incident to a general verdict respecting the specific grounds of negligence upon which it based its verdict. Here they are set forth with particularity and we are left in no doubt as to the negligence which was charged to the defendant company. The jury found that the company had operated its car at a fast and excessive rate of speed; that it had no headlight burning on the car; that the operator failed to give a warning signal of its approach, failed to have the street car under control and failed to watch for and observe traffic and that such failure was a direct and proximate cause of plaintiff's injuries.

There is support in this record for every fact which the jury found. If we set it aside it must be by our determination that the jury resolved the evidence in a manner which is not permissible by law. This we cannot do.

THE FIFTH AND LAST ASSIGNMENT OF ERROR IS THAT THE VERDICT IS EXCESSIVE.

The specific injuries which plaintiff suffered, found by the special verdict are convincing that the verdict is not excessive. They included a fracture of the pelvis bone, a fracture of two lumbar vertebrae, injuries to the kidneys, causing great pain and suffering, long treatment by physicians and in hospitals preventing the plaintiff from working and impairing his health and ability to work.

We find no error in this record prejudicial to the defendant requiring a setting aside of the judgment. It will therefore be affirmed.

BARNES, PJ, and GEIGER, J, concur.